UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Amanda Marie Huizar,

       Plaintiff,

v.

Commissioner of Social Security,

       Defendant.

_____

Case No. 4:21-cv-10859-SDD-JJCG
District Judge Stephanie Dawkins Davis
Magistrate Judge Jonathan J.C. Grey

## REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Amanda Marie Huizar seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying Huizar's applications for disability insurance benefits and supplemental security income under the Social Security Act. Huizar filed a motion for summary judgment (ECF No. 17), the Commissioner filed a response and cross-motion for summary judgment (ECF No. 18), and Huizar replied (ECF No. 19).

For the following reasons, the Court **RECOMMENDS** that Huizar's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.

I.     **Background**

    **A. Procedural History**

In March 27, 2017, Huizar filed a (1) Title II application for a period of disability and disability insurance benefits and (2) Title XVI application for supplemental security income. (Tr. 1049.[1]) In both applications, the claimant alleged that her disability began on June 15, 2009. *Id.* Huizar later amended her alleged onset date to March 27, 2017. (Tr. 271.) On December 18, 2017, both applications were denied. (Tr. 1049.) Huizar requested a hearing, and on August 13, 2019, she appeared with an attorney before Administrative Law Judge Timothy C. Scallen ("ALJ"), who reviewed the case *de novo*. (Tr. 164–78, 1069–98.) In a January 28, 2020 decision, the ALJ found that Huizar was not disabled. (Tr. 1049–61.). The Appeals Council initially denied review on February 10, 2021. (Tr. 8–13.) The Appeals Council set aside its February 10, 2021 denial to consider additional information and re-denied review on April 23, 2021, which made the ALJ's decision final. (Tr. 1–7; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543–44 (6th Cir. 2004).)

    **B. The ALJ's Application of the Disability Framework**

Under the Social Security Act, disability insurance benefits and supplemental security income are available only for those who have a "disability."

---

[1] The administrative record appears on the docket at entry number 12. All references to it are identified as "Tr."

*Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (definition used in the disability insurance benefits context); *see also* 20 C.F.R. § 416.905(a) (definition used in the social security income context).

The Commissioner determines whether a claimant is disabled through a five-step sequential analysis. 20 C.F.R. §§ 404.1520, 416.920. First, if the claimant is engaged in significant gainful activity, no disability will be found. Second, if the claimant does not have a severe impairment or combination of severe impairments for a continuous period of at least 12 months, no disability will be found. Third, if the claimant's severe impairment meets or equals one of the impairments listed in the regulations, the claimant will be found disabled. Fourth, if the claimant can perform their past relevant work or has residual functional capacity ("RFC"), no disability will be found. Fifth, even if the claimant is unable to perform their past relevant work, benefits are denied if the claimant can adjust to other work in view of their age, education, and work experience. If the Commissioner "makes a dispositive finding at any point in the five-step process," the evaluation will not proceed to the next step. *Colvin*, 475 F.3d at 730.

The claimant bears the burden of proof through step four, in which they must show "the existence and severity of limitations caused by [their] impairments and the fact that [they] are precluded from performing [their] past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner in which the Commissioner must show that "other jobs in significant numbers exist in the national economy that [the claimant] could perform given [their] RFC and considering relevant vocational factors." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234, 241 (6th Cir. 2007).

Huizar, born on April 28, 1979, was 39 years old on the alleged disability onset date. (Tr. 212.) She has a tenth-grade education and past relevant work as a home attendant and day worker. (Tr. 295, 1059.) She alleges she cannot work because of uncontrolled diabetes mellitus type 2, narcolepsy, acute keratitis bilateral, attention deficit hyperactivity disorder, bilateral carpal tunnel syndrome, major depressive disorder, anxiety, borderline personality disorder, and post-traumatic stress disorder. (Tr. 429.)

The ALJ applied the five-step disability analysis and found at step one that Huizar had not engaged in substantial gainful activity since the alleged onset date of March 27, 2017. (Tr. 1051.) At step two, the ALJ found that Huizar had the following severe impairments: history of diabetes mellitus, attention deficit hyperactivity disorder, bilateral carpal tunnel syndrome, anxiety, and a mood

4

disorder. (Tr. 1051.) At step three, the ALJ found no evidence that Huizar's impairments met or medically equaled one of the listings in the regulations. (Tr. 1052–54.) Next, the ALJ determined that Huizar has the RFC to perform light work with certain limitations:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except she can sit for a total of six hours, stand for a total of four hours, and walk for a total of four hours in an eight-hour workday. She can frequently reach, handle, finger, feel, and push and pull bilaterally. She can frequently climb stairs and ramps, but can never climb ladders, ropes, or scaffolds. She can frequently balance, stoop, kneel, crouch, and crawl. She must avoid unprotected heights and vibrations. She must avoid concentrated exposure to moving machinery, extreme temperatures, humidity, wetness, and pulmonary irritants including fumes and dust. She can perform simple, routine, and repetitive tasks, which means tasks requiring little judgment and which can be learned in a short amount of time. She can have occasional interaction with the public, coworkers, and supervisors.

(Tr. 1054.) At step four, the ALJ found that Huizar was unable to perform any past relevant work. (Tr. 1059.) At step five, the ALJ denied Huizar benefits, finding that there were jobs in significant numbers in the national economy that Huizar can perform. (Tr. 1060–61.)

## II. Discussion

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final administrative decision. The Court "must affirm the

5

Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (citations and internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241. In determining whether substantial evidence supports the ALJ's decision, the Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon,* 499 F.3d 506, 509 (6th Cir. 2007) (citation omitted); *see also Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

If the Commissioner's decision is supported by substantial evidence, it "must be affirmed even if the reviewing court would decide the matter differently . . . and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (citation omitted). Moreover, the ALJ is not required to discuss every piece of evidence in the

administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006).

The Court's review is limited to an examination of the record. *Bass*, 499 F.3d at 512–13. The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (citation omitted).

### B. Analysis

Huizar contends that the ALJ committed reversible legal error because (1) the ALJ did not reconcile his persuasive finding of Dr. George Starett's opinion in the RFC determination and (2) the ALJ's finding that narcolepsy is a non-severe impairment lacks substantial evidence. (ECF No. 17.) The Commissioner counters that the ALJ's decision should be affirmed because Huizar failed to demonstrate prejudicial error by the RFC determination and the ALJ adequately accounted for Huizar's narcolepsy in his analysis. (ECF No. 18.)

#### 1. The ALJ's RFC Determination

Dr. Starrett, psychological consultant, opined that Huizar could perform simple one-to-two step tasks with reasonable independence, and found that Huizar has "severe mental impairments that preclude multi-step tasks that require sustained concentration over extended periods." (Tr. 113.) The ALJ found this opinion to be "generally persuasive" for its consistency with the medical evidence

7

except for Dr. Starrett's findings on Huizar's social abilities. (Tr. 1059.) In the RFC determination, the ALJ concluded that Huizar can perform "simple, routine, and repetitive tasks, which means tasks requiring little judgment and which can be learned in a short amount of time." (Tr. 1054.)

The Department of Transportation assigns each job a General Educational Development (GED) score, which considers the reasoning, mathematical, and language development required for satisfactory job performance. *See Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991). Reasoning development is divided into six levels. *Id.*

Huizar argues that the ALJ erred by omitting Dr. Starrett's recommendation to limit Huizar to one-to-two step tasks. (ECF No. 17, PAGEID.1188–1192.) Specifically, Huizar asserts that the jobs the ALJ found Huizar can perform in Step Five are inconsistent with the omission of Dr. Starrett's recommendation. According to Huizar, one such job (that of a mail clerk) has a Level Three GED reasoning score, which requires more than a Level One ability to "apply commonsense understanding to carry out simple one- or two-step instructions" *Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991). At this stage, Huizar bears the burden to demonstrate that she has a more restrictive RFC than that found by the ALJ. *See Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999); *see also Jones*, 336 F. 3d at 474.

Although ALJs are responsible for assessing RFC based on their evaluation of the medical and non-medical evidence, they are not required to rely on medical opinions. *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination . . . and thus would be an abdication of the Commissioner's statutory responsibility.'"). Additionally, in considering medical opinions, an ALJ will not defer or give any specific evidentiary weight to any medical opinions. 20 C.F.R. § 404.1520c(a).

The most important factors for an ALJ to consider are supportability, or degree to which objective medical evidence supports the opinion, and consistency, or degree to which the opinion is consistent with other evidence. *Id.* at 404.1520c(c). This analysis requires "sufficiently detailed articulation" of application of those factors in which the ALJ must "show [their] work, i.e., to explain in detail *how the factors actually were applied* . . . to each medical source. *Hardy v. Comm'r of Soc. Sec.*, No. 20-10918, 2021 WL 3702170, at *6 (E.D. Mich. Aug. 13, 2021) (finding that the ALJ failed to discuss the supportability and consistency factors).

Here, the ALJ considered the supportability and consistency of Dr. Starrett's opinion. Prior to finding Dr. Starrett's opinion generally persuasive, the ALJ

9

summarized the record for approximately four pages. (Tr. 1055–58.) The ALJ further found that Dr. Starrett's opinion on Huizar's social abilities insufficiently accounted for Huizar's difficulty with socializing, citing a previous psychological evaluation. (Tr. 1059.)

Moreover, the Sixth Circuit states that the reasoning development requirements are "merely advisory in nature." *Matelski v. Comm'r of Soc. Sec.*, 149 F.3d 1183 (6th Cir. 1998) (citation omitted). In *Matelski*, the Sixth Circuit found that the ALJ's reliance on a vocational expert's testimony that contradicted the reasoning development requirements was not error. *Id.* Although the vocational expert here did not testify as to the one-to-two step limitation, the Court finds *Matelski*'s reasoning persuasive.

First, in Step Five, the ALJ listed other jobs that do not require Level Three reasoning, including small products assembler I and electrical equipment sub-assembler as Level Two reasoning jobs. (Tr. 1060.) Second, the ALJ's RFC of "simple, routine, and repetitive tasks" is consistent with Level Two jobs, which represent an ability to "[a]pply commonsense understanding to carry out detailed but uninvolved written or oral instructions." (Tr. 1054; *Dictionary of Occupational Titles*, Components of the Definition Trailer, 1991 WL 688702 (1991).) Other courts in the Sixth Circuit have reached the same conclusion. *E.g.*, *Padilla v. Saul*, No. 3:18-CV-580-CHB, 2020 WL 1651227, at *10 (W.D. Ky. Apr. 3, 2020)

10

("[T]he ALJ's finding that Plaintiff could perform simple one to three step tasks is consistent with the ability to perform jobs requiring level two reasoning."); *Russell v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-291, 2014 WL 1333262, at *13–14 (N.D. Ohio Mar. 31, 2014) ("[T]he undersigned finds that Plaintiff's limitation to simple one- or two-step instructions, simple routine tasks . . . is not inconsistent with the ability to perform jobs with reasoning Level 2.").

Finally, the identified Level Two jobs together provide 102,000 positions in the economy, which constitutes a significant number of available jobs. (Tr. 1059; *Taskila v. Comm'r of Soc. Sec.*, 819 F.3d 902, 905 (6th Cir. 2016) (finding that 6,000 jobs nationwide constitute a significant number of available jobs). The ALJ thus identified a significant number of jobs available in the national economy with reasoning levels that are consistent with the ALJ's RFC determination.

Huizar did not meet her burden to demonstrate that she has a more restrictive RFC than that found by the ALJ. Accordingly, substantial evidence supports the ALJ's RFC determination.

### 2. The ALJ's Step Two Analysis

Huizar argues that the ALJ's Step Two finding that Huizar's narcolepsy is not severe is not supported by substantial evidence. (ECF No. 17.) At this stage, Huizar bears the burden to demonstrate the severity of the limitations caused by

11

her impairments. *Jones*, 336 F.3d at 474; *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988).

Pursuant to § 404.1520(c) and § 404.1521, a claimant must have a severe impairment to establish disability. 20 C.F.R. § 404.1520(c); § 404.1521. The Sixth Circuit construes these Step Two severity regulations as a *de minimis* hurdle in which "an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience." *Higgs*, 880 F.2d at 862 (citation omitted). A non-severe impairment is "[a]n impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522(a). Basic work activities include physical activities like walking, standing, and sitting, as well as the capacity for seeing, hearing, and speaking. *Id.* at § 404.1522(b). An ALJ's failure to find an impairment severe is not reversible error if the ALJ found another impairment to be severe and continued with the five-step evaluation process. *E.g.*, *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007); *Anthony v. Astrue*, 266 F. App'x 451, 457 (6th Cir. 2008).

Here, the ALJ identified narcolepsy as a non-severe impairment. (Tr. 1052.) In support of her argument, Huizar argues that the ALJ "did not mention tiredness" in the Step Three or the RFC determination, simultaneously finding the ALJ's

12

"brief nod to narcolepsy" to be insufficient. (ECF No. 17, PAGEID.1193.) Huizar also highlights parts of the record in which Huizar self-reported sleep issues after her alleged onset date. (*Id.* at PAGEID.1193.)

The ALJ's decision shows that he considered Huizar's narcolepsy. During Step Two, the ALJ explained his finding that narcolepsy is not severe: "The claimant has a long-standing prescription for Provigil from her primary care physician to address [narcolepsy] . . . She has received no specialized treatment or made any particular subjective complaints since the amended alleged onset date."[2] (Tr. 1052.) The ALJ noted that Huizar reported having sleep difficulty in January 2015 and that Dr. Chadi Mansour, Huizar's primary care physician, once prescribed medication for these issues in April 2018. (Tr. 1057.) In the RFC determination, the ALJ included:

> She must also avoid exposure to unprotected heights, as she has described a history of suicidal thoughts. This restriction also accounts for the claimant's non-severe vision impairments and her narcolepsy, as reduced vision and a tendency to fall asleep at inopportune times would not be consistent with exposure to unprotected heights.

(Tr. 1059.) Finally, the ALJ adopted Dr. Jerilynn Campbell's opinion as persuasive, finding it to be consistent with the medical evidence and supported by

---

[2] Huizar's amended alleged onset date is March 27, 2017. (Tr. 271.) The record shows instances of Huizar's subjective reports of narcolepsy after this date. (Tr. 776, 830.) The Sixth Circuit states, however, that an ALJ is not required to accept a claimant's subjective complaints. *Jones*, 336 F.3d at 475. Subjective complaints can support a claim of support for disability only if there is objective medical evidence of the underlying condition. *Id.* The last instance of specialized treatment appears to be from 2013, prior to the onset date, in which Huizar sought treatment from sleep diagnostics specialist. (Tr. 490–95.)

13

citations. (Tr. 1058.) Dr. Campbell explicitly noted Huizar's narcolepsy in her opinion and suggested that Huizar take precautions against unprotected heights. (Tr. 1037–39.)

Moreover, even if the ALJ erred by excluding narcolepsy from the severe impairment list, the error is harmless. Where an ALJ considers a claimant's severe and non-severe impairments after Step Two in the analysis, the Sixth Circuit finds the fact that some impairments were not deemed to be severe at Step Two to be "legally irrelevant." *Anthony*, 266 F. App'x at 457. Here, as discussed above, the ALJ identified several severe impairments and considered Huizar's narcolepsy after Step Two, continuing with the five-step evaluation process.

The ALJ's failure to find Huizar's narcolepsy to be severe is not a reversible error and is supported by substantial evidence.

### III. Recommendation

For the foregoing reasons, the Court **RECOMMENDS** that Huizar's motion for summary judgment be **DENIED**, that the Commissioner's motion for summary judgment be **GRANTED**, and that the decision of the Commissioner be **AFFIRMED**.


Dated: March 4, 2022         s/**Jonathan J.C. Grey**
                             Jonathan J.C. Grey
                             United States Magistrate Judge

## Certificate of Service

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System on March 4, 2022.

s/ **M. Williams**
Michael Williams
Case Manager

**Notice to the Parties About Objections**

Within 14 days of being served with a copy of this Report and Recommendation, any party may object to and seek review of the proposed findings and recommendations set forth above. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). If a party fails to timely file specific objections, any further right of appeal is waived. *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Only specific objections to this Report and Recommendation are preserved for appeal; all other objections are waived. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). Each objection must be labeled as "Objection No. 1," "Objection No. 2," etc. Each objection must specify precisely the provision of this Report and Recommendation to which it pertains. In accordance with Local Rule 72.1(d), copies of objections must be served on this Magistrate Judge.

A party may respond to another party's objections within 14 days after service of any objections. Fed. R. Civ. P. 72(b)(2). Any such response should be concise and address each issue raised in the objections in the same order and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.